Annie WIGGINS, Appellant,

v.

NORTH AMERICAN EQUITABLE LIFE ASSURANCE COMPANY, Appellee.

No. 80–1300.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1981.

Decided April 2, 1981.

Paul J. Cockrell and Alonzo P. Hairston, Baltimore, Md., for appellant.

Robert B. Levin, Baltimore, Md. (John J. Kenny, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellee.

Before WINTER, RUSSELL and PHILLIPS, Circuit Judges.

WINTER, Circuit Judge:

This suit on an insurance policy in the face amount of $8000 was instituted in a state court but removed to the district court by the insurer on the ground of diversity of citizenship with the requisite amount in controversy. The district court granted defendant's motion to strike the prayer for punitive damages but then denied plaintiff's motion to remand the case to state court. After trying the merits, non-jury, the district court awarded judgment to the insurer except for the return of premiums. Plaintiff appeals. We reverse and remand the case with instructions to remand it to the state court. In our view the $10,000 jurisdictional amount was clearly never present, even when suit was instituted, and the district court lacked jurisdiction to decide the controversy on the merits.

I.

In January 1969, a certain Eugene F. Smith purchased from defendant, North

American Equitable Life Assurance Company, an Ohio corporation, a life insurance policy in the amount of $8,000 naming plaintiff, Annie Wiggins, his mother, the principal beneficiary. In August 1969, Smith disappeared from his home, and his whereabouts remain unknown. Premiums were paid on the policy by Mrs. Wiggins until October 1977 when, in a proceeding brought by her, the insured was declared by the Circuit Court of Baltimore City to have died on or about the latter part of August 1969, as a result of alcoholism and hepatitis. Plaintiff thereafter made a claim for the death benefit under the policy, but defendant refused to pay (other than a return of the premiums) on the ground that the insured had made material misrepresentations in his application for insurance.

Plaintiff instituted suit against defendant in the Superior Court of Baltimore City. Her declaration averred the purchase of the policy, her timely payment of the premiums, the entry of a decree declaring the insured legally dead and her demand, as beneficiary, "for approximately $9,000" in benefits due under the policy. Plaintiff averred further that the policy was incontestable after it had been in force during the lifetime of the insured for a period of one year. Finally, she averred that in January 1979, defendant twice refused payment of the full policy amount and offered only to refund the premiums paid over a period of eight years in the aggregate amount of $742. The language of the declaration concluded in this fashion:

7. That as a result of the company's refusal to pay the benefits due to Annie Wiggins, she has suffered extreme hardship and has been put through extra expense.

WHEREFORE PLAINTIFF PRAYS:

1. That she be awarded a total of $9,000.00 for compensatory damages.

2. That she be awarded $100,000.00 for punitive damages.

Following service of the declaration, defendant filed a petition for removal in the district court alleging diversity jurisdiction under 28 U.S.C. § 1332, i. e., that the parties were citizens of different states and that the amount in controversy exceeded the sum or value of $10,000. After the case was removed, defendant moved to dismiss plaintiff's complaint with respect to any claim for punitive damages or in the alternative to strike the prayer for punitive damages. Defendant argued that under Maryland law punitive damages can never be recovered in suits alleging pure breach of contract, and that therefore plaintiff could not recover punitive damages in the instant case since she sued to recover damages for an alleged breach of a contract of insurance. In her brief in this court, plaintiff tells us that she acquiesced in the grant of this motion, although the record discloses that she did submit a memorandum opposing it. By short order endorsed in the margin of the motion, the district court struck plaintiff's claim for punitive damages. Thereupon plaintiff filed a "Petition for Removal," seeking remand of the case to state court on the ground that the complaint failed to allege the $10,000 amount in controversy required for federal jurisdiction. The district court denied the petition. The case then proceeded to trial, non-jury, and resulted in judgment for defendant (except for the return of premiums, interest, and costs) on the ground that the insured had made material misrepresentations in procuring the policy of insurance thereby voiding the policy in its inception.

## II.

For removal of a state court action to a district court, 28 U.S.C. § 1441 requires that the action be one of which a district court of the United States has "original jurisdiction." Here jurisdiction is said to lie under 28 U.S.C. § 1332 on the ground that it is between citizens of different states—a fact not at issue—and involves a controversy exceeding the sum of $10,000, exclusive of interest and costs. It is the latter requirement on which this case turns.

Ordinarily the jurisdictional amount is determined by the amount of the plaintiff's original claim, provided that the claim is made in good faith. *See McDonald*

*v. Patton,* 240 F.2d 424 (4 Cir. 1957). But, as that case stated, on the authority of *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938):

> [I]t has been further recognized that while good faith is a salient factor, it alone does not control; for if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction . . . . However, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim.

240 F.2d at 426.

 In this case, our consideration of Maryland law, which the parties concede is the law to be applied, persuades us that plaintiff, as a matter of "legal certainty," could not recover punitive damages in this action. If this be true, it follows that at most $9,000 [1] was the amount in controversy and the requisites for diversity jurisdiction were not satisfied.

It is plain that plaintiff's alleged cause of action is for breach of a contract of insurance. The declaration alleges that the conditions of the contract were fulfilled, that the death benefit under the contract is payable and has been demanded, but that defendant has wrongly withheld it.

 In a recent decision of the Court of Appeals of Maryland, *General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16 (1977), the court had occasion to discuss the rationale of punitive damages in a tort case arising out of a contractual relationship. It pointed out that the rationale of allowing punitive or exemplary damages in a pure tort case is "to punish reprehensible and outrageous conduct and to set an example which will serve to deter the wrongdoer and others from engaging in such conduct in the future." 281 Md. at 638, 381 A.2d at 22. The court then added:

> However valid these policy objectives might be in respect to pure torts involving conduct of an extraordinary and outrageous character, they have little relevance in the area of contract law, where breaches of contract do not ordinarily engender as much resentment or mental or physical discomfort as do torts of the former variety. *Hence, the rule has developed that punitive damages may never be recovered in pure breach of contract suits, Food Fair Stores v. Hevey,* 275 Md. [50] at 57, 338 A.2d 43; *St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. [192] at 236, 278 A.2d 12, on the theory that it is sufficient to provide pecuniary compensation to the aggrieved party without the necessity of assuaging his feelings or allaying community outrage by means of exemplary damages. 5 *Corbin on Contracts* § 1077, at 438 (1964). A further reason for prohibiting recovery for punitive damages in pure contract cases is that the mere availability of such a remedy would seriously jeopardize the stability and predictability of commercial transactions, so vital to the smooth and efficient operation of the modern American economy. *See Vernon Fire & Casualty Insurance Co. v. Sharp,* Ind., 349 N.E.2d 173, 180 (1976).

281 Md. at 638–39, 381 A.2d at 22 (emphasis added). Our examination of *Food Fair Stores* and *St. Paul at Chase* cited in the quotation from *General Motors Corp.* discloses that they do hold that punitive dam-

---

**1.** The amount payable under the policy decreased slightly each year. The maximum payable in the event that the insured died during the first year of the policy was $8000. Plaintiff's declaration also alleged "extreme hardship" and "extra expense" resulting from the insurer's refusal to pay. While Maryland does permit the recovery of certain consequential damages resulting from the breach of an insurance contract, *e. g.,* the loss of a vehicle resulting from the insurer's refusal to defend and to pay for a loss insured against, "[o]rdinarily a plaintiff in an action on an insurance policy cannot recover special damages for the detention of money due to him under the policy beyond what the law allows as interest." *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Messenger,* 181 Md. 295, 301, 29 A.2d 653, 656 (1943). In any event, even if plaintiff could recover for her "extra expense" under Maryland law, such damages would be included within her claim for compensatory damages which, her declaration alleges, amount to only $9000.

ages may never be recovered in pure breach of contract suits.[2] Consequently, since we must accept this statement as the applicable Maryland law, we are ineluctably led to conclude that plaintiff could not recover punitive damages as she claimed and that therefore the instant case involves a controversy over only $9,000. It follows that the district court never had jurisdiction so that its judgment on the merits must be reversed, and it should return the case to the Superior Court of Baltimore City.

REVERSED AND REMANDED.

---

**2.** The Maryland cases do provide for recovery of punitive damages where the defendant maliciously breaches the contract. The malice required, however, consists of "an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Food Fair Stores, supra*, 275 Md. at 55, 338 A.2d at 46, *quoting Siegman v. Equitable Trust Co.*, 267 Md. 309, 314, 297 A.2d 758, 760 (1972). Even liberally construed, plaintiff's declaration does not allege such malice.